UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

—————

RICHARD ALLAN SIMMONS, # 189585,  )
     )
     Plaintiff,    )    Case No. 1:04-cv-610
     )
v.    )    Honorable Robert Holmes Bell
     )
TOM REAUME,    )    **REPORT AND RECOMMENDATION**
     )
     Defendant.    )
_____)

This is a civil action brought *pro se* by a state prisoner pursuant to 42 U.S.C. § 1983. Plaintiff is currently an inmate at the Thumb Correctional Facility located in Lapeer, Michigan. Plaintiff was an inmate at the Southern Michigan Correctional Facility located in Jackson, Michigan when he filed this lawsuit on September 13, 2004. (Complaint, ¶ 20, docket # 1). The events giving rise to this lawsuit occurred when plaintiff was an inmate at the Riverside Correctional Facility ("RCF") located in Ionia, Michigan. The only defendant is Chaplain Tom Reaume. (*See* docket #'s 10, 11, 14). Plaintiff is of Native American descent and is an adherent to Native American religious beliefs. (Amended Complaint, ¶ 6). Plaintiff alleges that defendant violated his First Amendment rights by "taking affirmative measures to deny the construction of a sweat lodge at RCF, " and by "taking affirmative measures designed to deny Plaintiff a transfer to a facility that had a sweat lodge" in violation of plaintiff's rights under the Fourteenth Amendment's Equal Protection Clause. (*Id.*, ¶¶ 28, 30). Plaintiff sued defendant in his individual capacity for monetary damages and in his official capacity for injunctive and declaratory relief. (*Id.,* ¶ 4).

The matter is now before me on defendant's February 4, 2005 motion for summary judgment.  (docket # 23).  On February 7, 2005, the court issued an order notifying plaintiff of his opportunity to submit affidavits, documents and other materials in opposition to defendant's motion. Plaintiff requested and received and extension of time within which to file a response.  The court's order granted plaintiff an extension until May 4, 2005.  (docket # 31).  Plaintiff did not file a brief in response to defendant's motion, but did file an amended complaint.  (docket # 33).  The amended complaint is verified under penalty of perjury and therefore is treated as plaintiff's affidavit in opposition to defendant's motion.[1]  (docket # 33).  For the reasons set forth herein, I recommend that defendant's motion for summary judgment be granted and that judgment be entered in defendant's favor on plaintiff's First and Fourteenth Amendment claims.  I further recommend that  plaintiff's claims for injunctive and declaratory relief be dismissed as moot, and that the newly-asserted claims appearing in the amended complaint be dismissed for lack of exhaustion as required by 42 U.S.C. § 1997e(a).

## Applicable Standards

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *Kocak v. Community Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).  The standard

---

[1]On summary judgment the court can only consider those portions of a verified complaint satisfying the requirements of Rule 56(e) of the Federal Rules of Civil Procedure. *See Weber v. Franks*, 229 F.3d 514, 526 n. 13 (6th Cir. 2000).  "[I]t is well established that hearsay evidence cannot be considered by a trial court ruling on a motion for summary judgment." *Tinsley v. General Motors Corp*, 227 F.3d 700, 703 (6th Cir. 2000).

for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Terry v. LaGrois*, 354 F.3d 527, 530 (6th Cir. 2004) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see Tucker v. Union of Needletrades Indus. & Textile Workers*, 407 F.3d 784, 787 (6th Cir. 2005); *Rainer v. Union Carbide Corp.*, 402 F.3d 608, 614 (6th Cir. 2005).

The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005). The party moving for summary judgment bears the initial burden of pointing out to the district court that there is an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once defendant shows that "there is an absence of evidence to support the nonmoving party's case," plaintiff has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see Hamby v. Neel*, 368 F.3d 549, 556 (6th Cir. 2004). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Daniels v. Woodside*, 396 F.3d 730, 734 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). "A nonmoving party may not avoid a properly supported motion for summary judgment by simply arguing that it relies solely or in part on credibility considerations. Instead, the nonmoving party must present evidence to defeat a properly supported motion for summary judgment. The party

opposing summary judgment must be able to point to some facts which may or will entitle him to judgment, or to refute the proof of the moving party in some material portion, and the opposing party may not merely recite the incantation, 'credibility,' and have a trial on the hope that a jury may believe factually uncontested proof." *Fogerty v. MGM Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004)(citations omitted).

<u>**Proposed Findings of Undisputed Facts**</u>

The following facts are established beyond genuine issue. Chaplain Reaume is RCF's institutional chaplain. The institutional chaplain is responsible for providing worship and study services and meetings for the faith groups who have obtained MDOC approval. The institutional chaplain recruits and supervises religious volunteers of various faiths.

Plaintiff was transferred into RCF in December 2002. Plaintiff identified Native American Traditional Worship as his faith preference. Plaintiff was placed on callouts and attended, irregularly, those services and meetings. Plaintiff states that sometime shortly after his arrival at RCF, he engaged defendant in a conversation regarding plaintiff's Native American Indian heritage. Defendant advised plaintiff that RCF did not have a sweat lodge. Plaintiff's response was that a sweat lodge ceremony was of such moment to plaintiff's practice of his religion that it was essential. According to plaintiff, defendant responded by indicating that RCF's warden would not allow a sweat lodge, but she would soon be retiring. Defendant indicated that he would approach the new warden regarding plaintiff's desire for RCF to have a sweat lodge.

On May 13, 2004, plaintiff sent a letter to Warden Palmer requesting a transfer to the Muskegon Correctional Facility because it had a sweat lodge.

-4-

On May 22, 2004, plaintiff filed a grievance against Chaplain Reaume (RCF040500666020B).  Plaintiff's grievance is set forth verbatim below

> I am a practitioner of the Native American Traditional Ways and have been most of my life.  I have requested Chaplain Reaume on numerous occasions to be allowed to have a Sweat Lodge and Pipe Ceremony.  These request have been given the following responses: "A Sweat Lodge will not be built here at Riverside and a volunteer cannot be found to hold a Pipe ceremony."
>
> PD 05.03.150 pg 1 of 10 paragraph C clearly holds that religious freedom is a constitutionally guaranteed right.[2]  Furthermore, the updated May 1, 1996 Guidelines for Native American Traditional Ways, pg 36 paragraph 3 subparagraph A holds Sweat Lodges will be permitted in Level Two facilities.  Both the Sweat Lodge and Pipe Ceremonies are basic tenets of my spiritual beliefs.
>
> I have not been allowed to attend either for almost two years.  I know of no other prisoner at Riverside who has been so arbitrarily deprived of his constitutional right to practice his spiritual beliefs.
>
> Because this facility cannot met my spiritual needs, I am requesting to be transferred to the Muskegon Correctional Facility where there is a Sweat Lodge, volunteers, and where I can practice my spiritual beliefs.  This is not an unusual request in that prisoners who need a Kosher diet because of their spiritual beliefs are transferred to prisons where their dietary needs can be accommodated.  See, MDOC OP 05.03.150.  To allow these prisoners to practice their spiritual beliefs while depriving me of mine is nothing short of denying me Equal Protection under the Laws.

(docket # 1, Ex. B).  On May 27, 2004, Chaplain Reaume responded to plaintiff's grievance as follows:

---

[2]Paragraph III(C) of the version of Policy Directive 05.03.150 in effect on May 22, 2004 stated:  "Religious freedom is a constitutionally guaranteed right.  All recognized religions shall enjoy equal status and protection, subject to those limitations necessary to maintain the order and security of the facility, including the health and safety of prisoners and staff."  Paragraph I of the policy directive stated:  "Prisoners shall be permitted to exercise their religious beliefs within the constraints necessary for the order and security of the facility."  The directive described the religious items prisoners, including Native American prisoners, were allowed to possess, and the  procedure prisoners were required to follow in order to obtain MDOC's permission to possess additional items. The process began with a written request to the warden or FOA Regional Administer or designee, and concluded with a final decision made by the "CFA Deputy Director."  The policy directive did not contain any provision for construction of religious structures at public expense.  The policy directive said nothing about prisoner transfers.  The revised policy directive 05.03.150, effective May 24, 2004 (docket # 23, Ex. B) did not alter any provisions pertinent to plaintiff's grievance.

-5-

> Prisoner Simmons was told by me that there is no statement in Policy 05.03.150 "Religious
> Beliefs and Practices of Prisoners" which requires the M.D.O.C. to either:
> 1) transfer a prisoner to a site where a sweat lodge is located, or
> 2) construct a sweat lodge at the facility.
>
> Mr. Simmons believes that he does have the right to this practice as an integral part of his
> faith practice.  (This is corroborated in the M.D.O.C. Handbook of Religious Groups
> summary of the Native American Religious practices.)
> He was referred to ADW Ball to discuss the possibility of transfer.

(docket # 1, Ex. C).  Defendant had no role in developing MDOC policy.  Defendant had no

authority to order prisoner transfers, and had no authority to authorize construction of a sweat lodge.

Defendant attempted to obtain the volunteer service of a recognized pipe carrier to

conduct a service at RCF, and to discuss when and how often such a ceremony should be held.  After

an extensive search, defendant made telephone contact with a volunteer, Mr. Timothy Loonsfoot,

who agreed to come to RCF on a Sunday in May 2005 and provide a service.  Mr. Loonsfoot was

cleared to enter the prison, but Mr. Loonsfoot never appeared on the arranged day.  Defendant

Reaume indicates that in his experience it has been difficult to obtain volunteers to conduct Native

American services.

Defendant arranged for plaintiff to meet with the assistant deputy warden, and during

this meeting defendant recommended to Assistant Deputy Ball that plaintiff be considered for a

transfer.  On May 27, 2004, Assistant Deputy Warden Gary Ball denied the request for transfer:

> Your letter to Warden Palmer requesting a transfer due to your religious beliefs and practices
> was referred to my office for response.  you have indicated that this facility cannot meet your
> spiritual needs because we do not offer a sweat lodge.
>
> Consistent with PD 05.03.150 Religious Freedom Rights, a Sweat Lodge ceremony will only
> be conducted by an authorized religious volunteer.  We have attempted to recruit a volunteer
> for this facility but have been unsuccessful at this time.  Moreover, there is no requirement
> that this facility offer a sweat lodge.  Native American Services are offered on Thursdays at
> 1500 hours in the Building Basement area.

-6-

Your request for a transfer is denied and you may practice your religious beliefs individually or at the group services.

(docket # 1, Ex. D).

On June 18, 2004, plaintiff was transferred to the Southern Michigan Correctional Facility. Warden Palmer's June 25, 2004, Step II response to the grievance against Chaplain Reaume contained the following summary of investigation: "After viewing your Step II grievance it has been determined that no policy violations were found. As indicated in the Step I response and readdressed by ADW Ball the construction of a sweat lodge is not a policy requirement. Volunteer services are being provided for Native American services. Chaplain Reaume has been in contact with Native American volunteers and is attempting to schedule more programming." Warden Palmer denied plaintiff's grievance at Step II. Plaintiff states that he appealed to Step III, and that he never received a response. Plaintiff filed his complaint on September 13, 2004.

### Discussion

### 1.

Plaintiff's claims for injunctive and declaratory relief are clearly moot as a result of plaintiff's June 18, 2004 transfer from RCF. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Abdur-Rahman v. Michigan Dep't of Corrections*, 65 F.3d 489, 491 (6th Cir. 1995); *see also Henderson v. Martin*, 73 F. App'x 115, 117 (6th Cir. 2003).

### 2.

Qualified immunity is among the grounds on which Chaplain Reaume seeks entry of judgment in his favor on plaintiff's claims for monetary damages. In *Harlow v. Fitzgerald*, 457 U.S.

800 (1982), the Supreme Court held that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818. The standard to be applied in deciding a claim of qualified immunity is one of objective reasonableness. *Id.* The question whether qualified immunity attaches to an official's actions is a purely legal issue for the trial court. *See Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004); *Summar v. Bennett*, 157 F.3d 1054, 1057 (6th Cir. 1998); *Dominque v. Telb*, 831 F.2d 673, 677 (6th Cir. 1987).

The Supreme Court's decision in *Saucier v. Katz*, 533 U.S. 194 (2001), emphasized that the defense of qualified immunity must be addressed in proper sequence.

> In a suit against an officer for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in proper sequence. Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. Qualified immunity is an entitlement not to stand trial or face other burdens of litigation. The privilege is *an immunity from suit* rather than a mere defense to liability; and like an absolute liability, it is effectively lost if a case is erroneously permitted to go to trial. As a result, we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation.

533 U.S. at 200-01 (citations omitted). The initial inquiry must be whether the plaintiff has alleged and supported with evidence facts showing that the defendant's conduct violated a constitutional right. 533 U.S. at 201; *Flaskamp v. Dearborn Pub. Sch.*, 385 F.3d 935, 940-41 (6th Cir. 2004); *Summers*, 368 F.3d at 888; *Akers v. McGinnis*, 352 F.3d 1030, 1042 (6th Cir. 2004). If the first question is answered in the affirmative, the court must then determine whether that right was clearly established such that a reasonable official, at the time the act was committed, would have understood that his behavior violated that right. 533 U.S. at 201. "A constitutional right must be clearly

established in a particularized sense. 'The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Rippy v. Hattaway*, 270 F.3d 416, 424 (6th Cir. 2001) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

"It is crucial, the Supreme Court has noted, that the second inquiry 'be undertaken in light of the specific context of the case, not as a broad general proposition.' Thus, '[t]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001) (quoting *Saucier*, 533 U.S. at 201); *see Brosseau v. Haugen,* 125 S. Ct. 596, 598 (2004); *Weaver v. Shadoan*, 340 F.3d 398, 407 (6th Cir. 2003); *Risbridger v. Connelly*, 275 F.3d 565, 569 (6th Cir. 2002). The court, of course, need not find a case in which the very action in question has previously been held unlawful, but in light of pre-existing law, the unlawfulness must be apparent. *See Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003); *Risbridger*, 273 F.3d at 569; *Comstock*, 273 F.3d at 702. However, "'qualified immunity protects all but the plainly incompetent or those who knowingly violate the law.'" *Rippy*, 270 F.3d at 424 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "Thus, officials are 'entitled to qualified immunity [when] their decision was reasonable, even if mistaken.'" *Toms v. Taft*, 338 F.3d 519, 524 (6th Cir. 2003) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)). The court must focus on whether, at the time defendant acted, the right asserted was "clearly established" by the decisions of the Supreme Court or the Sixth Circuit. *See Reynolds v. City of Anchorage*, 379 F.3d 358, 366 (6th Cir. 2004); *Gragg v. Kentucky Cabinet for Workforce Dev.*, 289 F.3d 958, 964 (6th Cir. 2002); *Comstock v. McCrary*, 273 F.3d at 702; *Walton v. City of Southfield*, 995 F.2d 1331, 1335-36 (6th Cir. 1993); *Garvie v. Jackson*, 845 F.2d 647, 649 (6th Cir. 1988). "If reasonable officials could disagree on the issue, immunity should be

recognized." *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999); *see Akers*, 352 F.3d at 1042. "For

qualified immunity to be surrendered, pre-existing law must dictate, that is truly compel (not just

suggest or allow to raise a question about), the conclusion for every-like situated, reasonable

government agent that what the defendant is doing violates federal law in the circumstances." *Saylor*

*v. Board of Educ.*, 118 F.3d 507, 514 (6th Cir. 1997); *see Gragg*, 289 F.3d at 964. "The burden of

convincing a court that the law was clearly established 'rests squarely with the plaintiff.'" *Key* 179

F.3d at 1000 (quoting *Cope v. Heltsley*, 128 F.3d 452, 459 (6th Cir. 1997)).

        Plaintiff has not satisfied the initial requirement of alleging and presenting evidence

demonstrating that defendant's conduct violated a constitutional right. 533 U.S. at 201. Plaintiff

contends that defendant violated his rights under the Fourteenth Amendment's Equal Protection

clause by denying plaintiff a desired transfer to a prison facility with a sweat lodge. (Amended

Complaint, ¶ 30). The Equal Protection Clause provides that a state may not "deny to any person

within its jurisdiction the equal protection of the laws," which is essentially a direction that all

persons similarly situated should be treated alike. U.S. Const., amend. XIV; *see City of Cleburne*

*v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). As the court's October 5, 2004 opinion

noted (Op. at 7, docket # 10), allowing prisoners to engage in sweat lodge ceremonies implicates

security concerns lacking counterparts in providing Kosher meals to Jewish prisoners. *Compare*

*McElhaney v. Elo*, No. 98-1832, 2000 WL 32036, at * 3 (6th Cir. Jan. 6, 2000) *with Russell v.*

*Wilkinson*, 79 F. App'x 175, 177-78 (6th Cir. 2003). Plaintiff has not presented any evidence in

support of his conclusion that Jewish prisoners were treated more favorably with regard to prison

transfers. More importantly, it is undisputed that this defendant lacked the power to grant or deny

prisoner transfers.  Defendant is entitled to judgment in his favor as a matter of law on plaintiff's wrongful denial of transfer claim.

Plaintiff alleges that defendant violated his First Amendment rights by "taking affirmative measures to deny the construction of a sweat lodge at RCF." (Amended Complaint, ¶ 28).[3]  Plaintiff's amended complaint attributes a number of offensive out-of-court statements to defendant, but does not identify any affirmative act defendant took to deny plaintiff permission to construct a sweat lodge at RCF.  It is undisputed that defendant lacked the power to grant or deny plaintiff permission to construct a sweat lodge.  Defendant is entitled to judgment in his favor as a matter of law on this claim.

Even assuming that plaintiff had been able to demonstrate the denial of a constitutional right by defendant, I find that defendant would nonetheless be entitled to qualified immunity.  Plaintiff has not shown that defendant's actions violated any clearly established constitutional right.

Plaintiff's amended complaint added allegation to the effect that plaintiff filed "six separate grievances alleging a denial [of his right to] practice his religion where:

> a) There was no provision for NATW members to smudge in the absence of the Chaplain;
> b) There is no literature dealing with Native American Spiritual Beliefs at RCF;
> c) ADW Ball suspended NATW services;

---

[3] There is no occasion to apply the standards established in *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) because there is, as yet, no controversy ripe for adjudication.  There is no record of any written request by plaintiff for permission to construct a sweat lodge, consequently no decision by the warden or other MDOC officials on whether such a structure would be allowed at RCF, under what restrictions, how it would be constructed, by whom, through what source of funding, how it would be operated and staffed, and  how frequently plaintiff would enjoy access to it.  *See Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985); *Ammex, Inc. v. Cox*, 351 F.3d 697, 706 (6th Cir. 2003).

      d) A NATW prisoner could only smudge in his room for two minutes;
      e) The Chaplain failed to develop and maintain a relationship with the Native American
      Indian Community; and
      f) The primary services for NATW were scheduled during a time when a majority of the
      prisoners had to work, which precluded them from attending."

(docket # 33, ¶ 14).  Plaintiff has not submitted evidence demonstrating exhaustion of these new

claims.  Accordingly, I recommend that these claims be dismissed pursuant to 42 U.S.C. § 1997e(a).

## Recommended Disposition

      For the foregoing reasons, I recommend that defendant's motion for summary

judgment (docket # 23) be granted, and that judgment be entered in defendant's favor on plaintiff's

claims based on denial of a desired transfer and permission to construct a sweat lodge.  I further

recommend that all other claims be dismissed.  Plaintiff's claims for injunctive and declaratory relief

should be dismissed because they are moot and the newly-asserted claims appearing in plaintiff's

amended complaint should be dismissed because they are not exhausted as required by 42 U.S.C.

§ 1997e(a).


Dated:   September 8, 2005          /s/  Joseph G. Scoville
                               United States Magistrate Judge


## NOTICE TO PARTIES

      Any objections to this Report and Recommendation must be filed and served within
ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All
objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file
timely objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474
U.S. 140 (1985); *Neuman v. Rivers*, 125 F.3d 315, 322-23 (6th Cir.), *cert. denied*, 522 U.S. 1030
(1997); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).